# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| JIMMY DARRELL RITCHIE, <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL, <br> Acting Commissioner of Social Security, <br><br> Defendant. | CAUSE NO.: 1:18-CV-169-HAB |

## OPINION AND ORDER

Plaintiff Jimmy D. Ritchie seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying his application for Disability Insurance Benefits (DIB). Plaintiff alleges that he has been disabled since November 30, 2013, due to a variety of physical impairments, including spinal stenosis, degenerating discs, pancreatitis, gout, leg numbness, carpal tunnel, and depression.

## ANALYSIS

### A. The ALJ's Decision

A person suffering from a disability that renders him unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that his

physical or mental limitations prevent her from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. § 423(d)(2)(A).

If a claimant's application is denied initially and on reconsideration, he may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1). An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he has the residual functional capacity to perform his past relevant work, and, if not (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a); *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

Here, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 30, 2013, the alleged onset date. At step two, the ALJ found that Plaintiff had the severe impairments of a history of chronic low back pain due to degenerative lumbar disc disease/lumbar spondylosis and mild to moderate obesity. The ALJ stated that these impairments had more than a minimal effect on Plaintiff's ability to work. Specifically, they limited Plaintiff's physical capacities for lifting, carrying, pushing and pulling heavy items, standing and walking for more than two hours during an eight-hour work day, and engaging in postural changes. His impairments additionally limited his ability to work around certain hazards in the workplace environment.

With respect to Plaintiff's medically determinable mental impairment of depressive disorder and anxiety disorder, the ALJ determined that they did not cause more than minimal limitation on Plaintiff's ability to perform basic mental work activities. The ALJ considered the diagnosis of Stephanie Wade, Psy. D, the consulting opinions of psychologist B. Randal Horton, Psy.D., and Joelle Larsen, Ph.D, as well as nurse practitioner Beatrice Lopez's questionnaire and a Function Report completed by Plaintiff's wife.

At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (R. 22.) The ALJ considered listings 1.04 (Disorders of the spine) as well as Social Security Ruling 02-1p (Obesity).

Before moving to step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b). The RFC included numerous postural and environmental limitations and noted that Plaintiff must avoid unprotected heights.

Based on the above RFC and his hypothetical questions to the vocational expert, the ALJ found that Plaintiff was not able to perform his past relevant work, but that there were other jobs that existed in significant numbers in the national economy. Thus, the ALJ found that Plaintiff was not disabled as defined in the Social Security Act.

**B.    Standard of Review**

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported

by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007).

In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted). While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995), but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of [his] reasoning." *Carlson v. Shalala*,

999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

C.     **Consultative Examiner Diagnosis of Major Depressive Disorder**

Plaintiff argues that the ALJ rejected the diagnosis of the state agency consultant, Dr. Wade, that Plaintiff had major depressive disorder, recurrent, severe. He argues that the impairment is severe by definition of the diagnoses alone. In response, Defendant counters that the ALJ did not reject the diagnosis, but rather, acknowledged the Plaintiff's depressive disorder. Defendant asserts, additionally, that whether the ALJ found it to be severe at Step 2 is not important as long as the ALJ proceeded with the disability analysis and considered all the functional limitations resulting from established impairments.

The Court agrees that the ALJ did not reject the diagnosis. He acknowledged the diagnosis and considered whether the impairment significantly limited Plaintiff's mental ability to do basic work activities. (R. 18-22.) In doing so, he used the "special technique" outlined by the applicable regulations. *See* 20 C.F.R. § 404.1520a(c)(2). Accordingly, and because the step two requirement of severity is "merely a threshold requirement," the Court can proceed directly to the RFC analysis. *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999); *see also Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010) ("Because the ALJ recognized numerous other severe impairments, he was obligated to proceed with the evaluation process.").

Although his argument is not developed, Plaintiff asserts that limitations corresponding to Plaintiff's mental impairment should have been included in the RFC. Indeed, an ALJ must "consider the limitations imposed by all impairments, severe and

5

non-severe." *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019); 20 C.F.R. § 404.1523. The duty to analyze non-severe impairments in formulating a claimant's RFC to be used at steps four and five is fundamental to the disability programs under the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 150-51 (1987) (emphasizing duty of Commissioner, when there is at least one severe impairment, to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity") (quoting 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(F) (1982 ed. and Supp. III)).

"A failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citing *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)). The ALJ correctly acknowledged, at Step 2, that

> [t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 . . . requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p).

(R. 22.) However, the ALJ then never proceeded to provide a more detailed assessment. Instead, at the end of the Step 2 analysis, immediately after the above quoted language, he stated, "[t]herefore, the following residual functional capacity reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis." (R. 22.)

It is not clear how the RFC "reflects" the degree of limitation found. The B criteria are: (1) Understand, remember, or apply information (see 12.00E1); (2) Interact with others (see 12.00E2); (3) Concentrate, persist, or maintain pace (see 12.00E3); and (4) Adapt or manage oneself (see 12.00E4). Each paragraph contains a description of the abilities referenced in the broad category. For example, paragraph B4, adapt or manage oneself refers

> to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

The ALJ's decision does not reveal that he engaged in the more detailed assessment by itemizing various functions contained in the broad categories. Although he discussed the B4 functional area in the Step 2 analysis, the focus was on Plaintiff's daily activities, including his personal care. The ALJ did not delve into any of the other areas of functioning within the broader category. At no point in the ALJ's decision does he mention some of the findings from Dr. Wade's evaluation that could impact the analysis, such as Plaintiff's loss of interest, feelings of worthlessness, hypersomnia, fatigue, poor concentration, psychomotor agitation, and thoughts of suicide.

Additionally, the ALJ concludes that "most of the claimant's problems noted during [Dr. Wade's] evaluation of [Plaintiff] seemed to relate to his back pain, limited finances, worries about paying bills and his health, etc." (R. 21.) The ALJ does not explain

7

why the subjects of Plaintiff's worry, or what contributed to his symptoms of depression, are pertinent to the functional limitations brought about by the anxiety and depression. Nor is the statement accurate in all respects. Plaintiff reported worrying about "'everything,' worrying about bills, things he needs to do, his children, his wife, and his health." (R. 347.) Although Plaintiff reported missing work for back pain, he also missed work "when he felt too depressed to go into work." (R. 346.) Dr. Wade's report contains no explanation for the suicidal ideation, much less one that was dictated by his physical health or finances.

Although a mild limitation in an area of mental functioning does not necessarily equate to a functional limitation in the RFC, the ALJ is still required to analyze the limitations in light of Plaintiff's other impairments when determining the RFC. *See Simon-Leveque v. Colvin*, 229 F. Supp. 3d 778, 787–88 (N.D. Ill January 17, 2017) (remanding when ALJ failed to explain why mild limitations in mental functioning did not require RFC limitations); *Dross-Swart v. Astrue*, 872 F. Supp. 2d 780, 795 (N.D. Ind. 2012) (same). "If the ALJ believed that the mild limitations in these functional areas did not merit a non-exertional limitation in the RFC, he was obligated to explain that conclusion so that we can follow the basis of his reasoning." *Muzzarelli v. Astrue*, No. 10 C 7570, 2011 WL 5873793, at *23 (N.D. Ill. Nov. 18, 2011) (citing *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005) (remanding where ALJ used the language at the end of Step 2 without explaining how restrictions were "reflected" in the RFC)). The ALJ did not provide that explanation here, and the Court cannot follow the basis of his reasoning.

Despite finding that Plaintiff suffered from the medically determinable mental impairments of depressive disorder and anxiety disorder, and had mild limitations in all four areas of functioning, the ALJ did not incorporate any mental limitations in the RFC determination.[1] Not only does the RFC not contain any non-exertional limitations, there is no explanation why. Remand is appropriate.[2]

## CONCLUSION

For the reasons stated above, the Court REVERSES and REMANDS the Commissioner's decision for further proceedings consistent with this Opinion.

SO ORDERED on November 21, 2019.

                                        s/ *Holly A. Brady*
                                        JUDGE HOLLY A. BRADY
                                        UNITED STATES DISTRICT COURT

---

[1] The ALJ notes in the Step 2 discussion that the vocational expert identified jobs that a person who was limited to unskilled work could perform. He added, "[t]his limitation is unsupported by the evidence, but even upon generously giving the claimant the benefit of the doubt that he was so limited, he could still work." (R. 22.) The ALJ does not explain how a restriction to unskilled work would address Plaintiff's limitations.

[2] It is not necessary for the Court to address Plaintiff's remaining arguments.